UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| **MICHAEL WOLFORD**, individually and on behalf of all others similarly situated, | § § § § | Docket No. 2:19-CV-109 |
| **Plaintiff,** | § § | JURY TRIAL DEMANDED |
| v. | § § § | CLASS/COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)/ FED. R. CIV. P. 23 |
| **QUALITY INTEGRATED SERVICES, INC.** | § § § | |
| **Defendant.** | § § | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### I.  SUMMARY

1. Plaintiff Michael Wolford (Wolford) brings this lawsuit to recover unpaid overtime wages and other damages from Quality Integrated Services, Inc. (QIS) under the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. §333.101 *et seq.* (the "PMWA").

2. QIS is an oil and gas and construction staffing company. QIS employs oilfield personnel to carry out its work.

3. Wolford and the other workers like him regularly worked for QIS in excess of forty (40) hours each week.

4. But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

5. Instead of paying overtime as required by the FLSA and the PMWA, QIS improperly classified Wolford and those similarly situated workers as exempt employees and paid them a daily rate with no overtime compensation.

6. This class and collective action seeks to recover the unpaid overtime wages and other

damages owed to these workers.

## II.   JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court because Wolford is a resident of Westmoreland County, in this District and Division.

## III.   THE PARTIES

10. Wolford worked for QIS from June of 2018 until January of 2019 as HSE Advisor.

11. Throughout his employment with QIS, Wolford was paid a day-rate with no overtime compensation.

12. Wolford's consent to be a party plaintiff has been filed with the Court as Exhibit A.

13. Wolford brings this action on behalf of himself and all other similarly situated workers who were paid by QIS's day-rate system.  QIS paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA and the PMWA.

14. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All employees of Quality Integrated Services, Inc. who were paid a day rate with no overtime in the past three (3) years. ("Putative Class Members")**

15. Wolford also seeks class certification of such a class under FED. R. CIV. P. 23, under the PMWA.

16. Defendant Quality Integrated Services, Inc. is an Oklahoma corporation doing business throughout the United States, including Pennsylvania. QIS may be served through its registered agent, The Corporation Company, 1833 S. Morgan Rd. Oklahoma City, Oklahoma 73128.

### IV.   COVERAGE UNDER THE FLSA

17. At all times hereinafter mentioned, QIS has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18. At all times hereinafter mentioned, QIS has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19. At all times hereinafter mentioned, QIS has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as oilfield equipment, hand tools, computers, automobiles, and cell phones - by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

20. At all times hereinafter mentioned, Wolford and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

21. As will be shown through this litigation, QIS treated Wolford the Putative Class Members as employees and uniformly dictated the pay practices Wolford and its other employees were subjected to.

### V.   FACTS

22. QIS provides pipeline inspection and construction management services throughout the contiguous 48 United States, Alaska and Hawaii, including the Marcellus, Utica, Barnett, Eagle

Ford, Haynesville, Fayetteville, and Bakkan shale areas.1 To complete their business objectives, QIS hires personnel (like Wolford) to perform work.

23. Many of these individuals worked for QIS on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

24. QIS paid the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that **day (or in that workweek) and failed to provide them with overtime pay for hours** that they worked in excess of forty (40) hours in a workweek.

25. For example, Wolford worked for QIS from June 2018 until January of 2019. Throughout his employment with QIS, he was paid on a day-rate basis.

26. Wolford normally worked 10 to 12 hours a day.

27. Wolford would work 13 days on and 1 day off.

28. Wolford was never guaranteed a salary when he worked for QIS.

29. Wolford was required to report the days worked to QIS, not the hours he worked.

30. The work Wolford performed was an essential and integral part of QIS's core business.

31. During Wolford's employment with QIS, it and/or the company QIS contracted with exercised control over all aspects of his job.

32. QIS and/or the company it contracted with controlled all the significant or meaningful aspects of the job duties performed by Wolford.

33. Even though Wolford often worked away from QIS's offices, QIS still controlled all aspects of Wolford's job activities by enforcing mandatory compliance with QIS's and/or its client's policies and procedures.

---

[1] https://www.qisinspection.com/about-us.php (last visited February 1, 2019).

34. **QIS directly determined** Wolford's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for QIS.

35. Very little skill, training, or initiative was required of Wolford to perform his job duties.

36. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by QIS and/or its clients. Virtually every job function was pre-determined by QIS and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

37. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

38. Wolford and the Putative Class Members did not have any supervisory or management duties.

39. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

40. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

41. QIS's policy of failing to pay its employees, including Wolford, overtime violates the FLSA and the PMWA because these workers are performing non-exempt job duties.

42. It is undisputed that Wolford and the Putative Class Members are operating oilfield machinery, performing manual labor, and working long hours out in the field.

43. QIS's day-rate system violates the FLSA and the PMWA because Wolford and those similarly situated did not receive any overtime pay for hours **worked over 40 hours each week**.

## VI. FLSA VIOLATIONS

44. As set forth herein, QIS has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

45. QIS knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. QIS's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

46. Accordingly, Wolford and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## VII. PMWA VIOLATION

47. Wolford brings this claim under the PMWA as a Rule 23 class action.

48. The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

49. At all relevant times, QIS was subject to the requirements of the PMWA.

50. At all relevant times, QIS employed Wolford and each Class Member with Pennsylvania state law claims as an "employee" within the meaning of the PMWA.

51. The PMWA requires employers like QIS to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week. Wolford and each member of the Pennsylvania class are entitled to overtime pay under the PMWA.

52. QIS had a policy and practice of failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

53. Wolford and each member of the Pennsylvania class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

54. Wolford and each member of the Pennsylvania class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by QIS, as provided by the PMWA.

## VIII.    CLASS AND COLLECTIVE ACTION ALLEGATIONS

55. Wolford incorporates all previous paragraphs and alleges that the illegal pay practices QIS imposed on Wolford were likewise imposed on the Putative Class Members.

56. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the PMWA.

57. Numerous other individuals who worked with Wolford indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

58. Based on his experiences and tenure with QIS, Wolford is aware that QIS's illegal practices were imposed on the Putative Class Members.

59. The Putative Class Members were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

60. QIS's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

61. Wolford's experiences are therefore typical of the experiences of the Putative Class Members.

62. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

63. Wolford has no interests contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Wolford has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

64. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

65. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and QIS will reap the unjust benefits of violating the FLSA and applicable state labor laws.

66. Furthermore, even if some of the Putative Class Members could afford individual litigation against QIS, it would be unduly burdensome to the judicial system.

67. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

68. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether QIS employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA and the PMWA;

   b. Whether QIS's day rate pay practice meets the salary-basis test;

   c. Whether QIS's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

   d. Whether QIS's violation of the FLSA and the PMWA was willful; and

   e. Whether QIS's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

69. Wolford's claims are typical of the claims of the Putative Class Members. Wolford and the Putative Class Members sustained damages arising out of QIS's illegal and uniform employment policy.

70. Wolford knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

71. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## IX.   JURY DEMAND

72. Wolford demands a trial by jury.

## X.   RELIEF SOUGHT

73. WHEREFORE, Wolford prays for judgment against QIS as follows:

   a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order pursuant to Section 16(b) of the FLSA finding QIS liable for unpaid back wages due to Wolford and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

   c. For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

   d. For an Order appointing Wolford and his counsel as Class Counsel to represent the interests of both the federal and state law classes;

e. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

f. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
    Michael A. Josephson
    PA Bar No. 308410
    Andrew W. Dunlap
    Texas Bar No. 24078444
    **Richard M. Schreiber**
    **Texas Bar No. 24056278**
    *(pending pro hac vice)*
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    rschreiber@mybackwages.com

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **AND**

Joshua P. Geist
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: (412) 766-1455
Fax: (412)766-0300
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**